# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SARAH WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:21-cv-01344-SEP |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court are motions to dismiss filed by Defendant City of St. Louis, Doc. 7; Defendants Metcalf, Thompson, Baker, Colombo, and Morris (collectively, the "Individual Defendants"), Doc. 11; and Defendants Baker, Colombo, and Morris, Doc. 38. For the reasons set forth below, the motions filed by the City and the Individual Defendants are granted, and the motion filed by Baker, Colombo, and Morris is denied as moot.

### FACTS AND BACKGROUND

Plaintiff Sarah Watkins brings this action under 42 U.S.C. § 1983 against the City of St. Louis and St. Louis International Airport Police officers Andrew Metcalf, Bryant Morris, Darryl Baker, Justin Colombo, and Anthony Thompson, for violation of her rights protected by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[1] *See* Doc. 1 ¶¶ 26-47.

### A. The December 24th Incident[2]

At 9:00 PM on December 24, 2016, Plaintiff, a 230-pound, 29-year-old female, was driving near the St. Louis Lambert International Airport when Officer Metcalf stopped her vehicle for an alleged traffic violation. Doc. 1 ¶¶ 15-16. Metcalf informed the Airport Police Department of the stop and Officers Morris, Baker, Colombo, and Thompson arrived soon after to assist. *Id.* ¶ 17.

---

[1] The Complaint also names Officer Frederick Thompson, but Frederick Thompson was granted summary judgment because it was uncontested that he was not on duty on the date in question and was not involved in the incident. *See* Doc. 44.

[2] The facts are taken from the Complaint and, for the purposes of these motions to dismiss, are accepted as true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

1

Due to the order of the allegations and the Complaint's lack of detail about each party's alleged actions, the chronology of events is not clear. At some point, Metcalf ordered Plaintiff to exit her vehicle and then handcuffed her at the rear of her vehicle. *Id.* ¶¶ 19-20. Apparently believing that Plaintiff was resisting arrest, *id.* ¶ 23, Metcalf "yelled" at Plaintiff and "forced her into the front of her vehicle." *Id.* ¶ 20. At some point after forcing Plaintiff into *her* vehicle, Metcalf attempted to force Plaintiff into *his own* vehicle. *Id.* ¶ 20. As that happened, "Defendant Officers sprayed her with pepper spray and repeatedly hit her on the leg with a baton." *Id.* ¶ 20. "Defendant Officers continued to pepper spray and hit [her] while she was restrained and pinned in the front seat of Officer Metcalf's car . . . ." *Id.* ¶ 21. Apparently at some later point, one, several, or all of the officers "pepper sprayed and hit [Plaintiff] while she was on the ground," and while one, several, or all of the officers "were present and available to maneuver and otherwise secure [her] cooperation." *Id.* ¶ 22. No allegation imputes any specific action to any Individual Defendant other than Officer Metcalf. No allegation describes Plaintiff's demeanor or conduct during the incident.

At some point, having "secured [Plaintiff's] cooperation," the officers transported Plaintiff to the Airport police station and offered to transport her to the "emergency room" for treatment. *Id.* ¶ 24. Plaintiff apparently declined their offer and was instead treated at "urgent care" for "lacerations and bruising to her leg," as well as "pain and injuries caused to her face and body." *Id.* ¶ 25.

**B. The Complaint**

Plaintiff's Complaint sets forth two counts. In Count I, Plaintiff seeks monetary damages against the Individual Defendants in their individual and official capacities under 42 U.S.C. § 1983, based on allegations that they unlawfully seized, assaulted, and brutalized her in violation of her rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. In Count II, Plaintiff seeks monetary damages against the City of St. Louis under 42 U.S.C. § 1983, on the basis that the City had a policy or custom, or it failed to train or supervise its officers, which caused Plaintiff to be deprived of her constitutional rights by the Individual Defendants as described above.

### C. Procedural Background

On January 25, 2022, the City filed a motion to dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 7. That motion is fully briefed.

On February 16, 2022, all six Individual Defendants filed a joint motion to dismiss Count I pursuant to Rules 12(b)(5) and (6) for insufficient service of process and failure to state a claim, respectively. Doc. 11. On March 18th, Plaintiff filed her memorandum in opposition to that motion, which effectively conceded the Individual Defendants' ineffective service of process argument but argued that the Court should grant her an extension of time to effectuate service. Doc. 22 at 4-7. The Court informed Plaintiff that any request for an extension of time must be made in its own motion, and on May 23rd, Plaintiff filed a consent motion for extension of time to effectuate service of process. Doc. 28. The Court granted that motion on May 24th and gave Plaintiff additional time to properly serve the Individual Defendants. Doc. 29.

On June 28th, Defendants Morris, Baker, and Colombo filed a second motion to dismiss. Doc. 38. That second motion raises a new Rule 12(b)(5) argument, but neither party made any alterations to the Rule 12(b)(6) arguments made in the briefing of the first motion to dismiss. *See* Docs. 39, 41. Accordingly, as to the June 28th Morris, Baker, and Colombo motion to dismiss, the Court addresses only the argument for dismissal under Rule 12(b)(5).

### LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true, *Neitzke*, 490 U.S. at 326-27, and draws all reasonable inferences in the non-movant's favor, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corporation v. Twombly,* the Supreme Court explained that Rule 8(a)(2) requires that a complaint contain "more than labels and conclusions," and that "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007); *accord Ashcroft v.*

3

*Iqbal,* 556 U.S. 662, 678-79 (2009).  In *Ashcroft v. Iqbal*, the Supreme Court reiterated that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and that "naked assertions devoid of further factual enhancement" will not suffice.  556 U.S. at 678 (quoting *Twombly*, 550 at 557) (quotation marks omitted).

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570).  The issue in considering such a motion is not whether the plaintiff has proven the claim or whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to engage in the discovery necessary to support the claim.  *See Twombly*, 550 U.S. at 556.

## Discussion

**I.  The Individual Defendants' Motion to Dismiss (Doc. 11)**

The Individual Defendants move to dismiss Count I under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  Doc. 11.  Count I brings § 1983 claims against the Individual Defendants in their individual and official capacities for violating Plaintiff's rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  Doc. 1 ¶¶ 26-35.  As set forth below, all claims in Count I will be dismissed.

### A. Plaintiff's official-capacity claims against the Individual Defendants are redundant of her claim against the City.[3]

"A core tenet of 42 U.S.C. § 1983 jurisprudence is that an official-capacity suit against an individual is really a suit against that official's government entity."  *Banks v. Slay*, 875 F.3d 876, 878 (8th Cir. 2017).  "Thus, the real party in interest in an official-capacity suit is not the named official, but the government entity."  *Stockley v. Joyce*, 2019 WL 630049, at *26 (E.D. Mo. Feb. 14, 2019) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  "It is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer."

---

[3] Defendants Morris, Baker, and Colombo brought a separate motion to dismiss Plaintiff's official-capacity claims against them pursuant to Federal Rule of Civil Procedure 12(b)(5) on the grounds that Plaintiff has not properly served them in their official capacity.  *See* Doc. 39 at 2-3.  Because the official-capacity claims against the Individual Defendants are dismissed as redundant, Morris, Baker, and Colombo's motion to dismiss under Rule 12(b)(5) will be denied as moot.

*Caruso v. City of St. Louis*, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)).  Because Plaintiff has asserted a claim based on the same occurrence against both the Individual Defendants and their governmental employer, the City of St. Louis, her redundant official-capacity claims against the Individual Defendants are subject to dismissal.

### B.  Plaintiffs' individual-capacity claims also fail.

The Individual Defendants argue that Count I should be dismissed because Plaintiff fails to state a claim for conspiracy under 42 U.S.C. § 1985, *see* Doc. 12 at 12-13; Plaintiff fails to state a claim under the Eighth and Fourteenth Amendments, *see id.* at 11-12; and the Individual Defendants are entitled to qualified immunity against Plaintiff's Fourth Amendment claim, *see* Doc. 12 at 7-11.  The Court considers each argument in turn.

#### 1.  *Plaintiff does not plead a claim for conspiracy under 42 U.S.C. § 1985.*

The Complaint states that the Individual Defendants are being sued "under 42 U.S.C. §§ 1983, 1985, and 1988," and that Plaintiff's "actions arise under 42 U.S.C. §§ 1983, 1985, and 1988."  Doc. 1 ¶¶ 2, 10.  42 U.S.C. § 1985(3) does allow Plaintiff to sue state actors for conspiracy to deprive her of her federally protected civil rights.  Although the Complaint does not expressly set forth a claim against the Individual Defendants for conspiracy under § 1985, Plaintiff does allege that "officers of the Airport Police Department and Public Safety Department conspire with one another to cover for and protect one another from criminal and/or civil sanctions that might arise from the violation of constitutional rights of a citizen through weak oversight of officer use of force."  Doc. 1 ¶ 38(b).

The Individual Defendants argue that, "to the extent that it attempts to plead a claim of conspiracy under 42 U.S.C. § 1985," the Complaint "fails to state a cause of action upon which relief can be granted."  Doc. 12 at 12.  According to Plaintiff, however, "[she] never raised a 42 U.S.C. § 1985 claim"; the allegations regarding a conspiracy among the City's officers relate only to the claims against the City in Count II.  Doc. 22 at 11.  Because Plaintiff has expressly disclaimed a § 1985 claim, to the extent that the Complaint could be construed as alleging one, that claim is dismissed.

5

### *2. Plaintiff cannot bring a claim under the Eighth or Fourteenth Amendments.*

Count I is titled "Violation of Fourth, Eighth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983." Doc. 1 at 7. Plaintiff alleges that the Individual Defendants used excessive force, assaulted, brutalized, and unreasonably seized her in violation of the Fourth and Fourteenth Amendments. *Id.* ¶¶ 27, 28. Plaintiff does not connect any specific allegation to the Eighth Amendment; she simply asserts that she was deprived of her rights to be free from unreasonable seizures and excessive use of force, and to have her serious medical needs addressed, "in violation of the Fourth, Eighth, and Fourteenth Amendments." *Id.* ¶ 33. Plaintiff also alleges that the Individual Defendants were deliberately indifferent to her constitutional rights because they failed to exercise proper crisis management; used pepper spray and a baton after she had been restrained in order to obtain "pain compliance"; "[kept] her on the ground before, during, and after using pepper spray and a baton"; and failed to take reasonable measures to abate the "aforementioned risks and the conditions [Plaintiff] suffered from." *Id.* ¶ 29.

### *a. The Eighth Amendment does not apply to Plaintiff's claims because she was not convicted of a crime or incarcerated at the time of the incident.*

The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (internal quotations marks and citation omitted). It also "requires the State to provide adequate medical care to incarcerated persons." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) (citation omitted). But the Eighth Amendment itself does not apply until "after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions, [because] the State does not acquire the power to punish with which the Eight Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Id.* at 199, n. 6 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977) (cleaned up)). Because Plaintiff does not allege that she was

6

convicted of a crime or incarcerated at the time of the incident, her claims do not arise under the Eighth Amendment.

### b. The Fourteenth Amendment does not apply to Plaintiff's claims because they must be brought under the Fourth Amendment.

Where "a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997)). "[*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff's claims against the Individual Defendants are based on allegations that they "used excessive force" when they "unreasonably seized" her, *see* Doc. 1 ¶¶ 27, 28, and are thus covered by the Fourth Amendment. For that reason, she cannot bring a substantive due process claim predicated on the same facts. *See Lewis*, 523 U.S. at 843; *Graham*, 490 U.S. at 395.

### 3. Plaintiff's Fourth Amendment claims are barred by qualified immunity.

The Individual Defendants argue that they are entitled to qualified immunity. "Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known." *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To defeat qualified immunity, the plaintiff has the burden to prove: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018) (*Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). "Unless both of these questions are answered affirmatively, [a defendant] is entitled to qualified immunity." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Nord v. Walsh City*, 757 F.3d 734, 738 (8th Cir. 2014)). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

7

analysis should be addressed first in light of the circumstances in the particular case at hand." *Hemminghaus v. Missouri*, 756 F.3d 1100, 1110 (8th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

> a. *Plaintiff has not successfully alleged a violation of her Fourth Amendment rights.*

The Fourth Amendment protects individuals from "unreasonable seizures," U.S. Const. amend IV, and the use of excessive force during an arrest constitutes an unreasonable seizure. *See Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021). "In a § 1983 case, an official is only liable for his own misconduct," and is not liable for the misconduct of others, even if they are his agents. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677-78) (cleaned up). The Court must therefore "examine each Individual Defendants' own actions to determine whether he . . . violated Plaintiff's Fourth Amendment rights." *Leonard v. St. Charles Cnty.*, 570 F. Supp. 3d 707, 718 (E.D. Mo. 2021), *appeal filed*, No. 21-3755 (8th Cir. Dec. 2, 2021) (citing *Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 708 (E.D. Mo. 2012)).

The only Individual Defendant to whom specific allegations are directed is Officer Metcalf. Plaintiff alleges that Metcalf stopped her vehicle "for an alleged traffic violation," Doc. 1 ¶ 16; called in the traffic stop, *id.* ¶ 17; asked Plaintiff to step to the rear of the vehicle, *id.* ¶ 19; handcuffed her, yelled at her, and "forced her into the front of her vehicle"; *id.* ¶ 20; and then "forc[ed] [her] into [his own] vehicle," *id.* ¶ 20. Plaintiff does not dispute that she committed the traffic violation, which would have provided probable cause for the stop, nor does she claim that the traffic stop was made without "reasonable, articulable suspicion [of] criminal activity"—the minimum requirement for a traffic stop. *United States v. Frasher*, 632 F.3d 450, 453 (2011) (quoting *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001)). Therefore, Plaintiff has provided no basis for a reasonable factfinder to infer that Metcalf's traffic stop constituted an unreasonable seizure.

All other material allegations in the Complaint refer only to "Officer Defendants" and do not specify which Defendant did what. Setting aside Plaintiff's failure to allege each Individual Defendant's conduct with specificity, she still does not allege facts that, viewed in the light most favorable to her, demonstrate an unreasonable seizure.

8

Plaintiff alleges that after Metcalf stopped her vehicle, ordered her to the rear of the vehicle, handcuffed her, and "forc[ed] her into the front of her vehicle," "Defendant Officers sprayed her with pepper spray and repeatedly hit her on the leg with a baton." Doc. 1 ¶¶ 19-20.  Plaintiff also alleges that "Defendant Officers pepper sprayed and hit [her] while she was on the ground and when Defendant Officers were present and available to maneuver and otherwise secure [her] cooperation," *id.* ¶ 22; and "Defendant Officers continued to pepper spray and hit [her] while she was restrained and pinned in the front seat of Officer Metcalf's car," *id.* ¶ 21.  Plaintiff further claims that Defendant Officers used pepper spray and a baton "without provocation," *id.* ¶ 20, but also that Defendant Officers did so because they believed she was "resist[ing] arrest," *id.* ¶ 23, and that it was necessary to "secure [her] cooperation," *id.* ¶ 22.

"It is well-established that 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).  Because Officer Metcalf had the right to make an investigatory stop, "some degree of physical coercion or threat thereof" was reasonable to effectuate the stop.  *Id.*

"An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  *Id.* at 905-06 (quoting *Graham*, 490 U.S. at 396-97).  "[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Graham*, 490 U.S. at 396-97).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Taylor v. Holtmeyer*, 183 F. Supp. 3d 962, 970 (D. Neb. 2016) (citing *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) (quoting *Graham*, 490 U.S. at 396))).  When determining whether an officer's use of force was unreasonable, courts look "to the specific circumstances, such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively

9

resisting arrest or attempting to evade arrest by flight." *Taylor*, 183 F. Supp. 3d at 970 (citing *Peterson*, 754 F.3d at 600).

The Complaint provides no basis for the Court to infer that the Individual Defendants' actions were not "proportionate to the situation." *McManemy v. Tierney*, 2018 WL 5269819, at *7 (N.D. Iowa Oct. 23, 2018) (comparing *Rokusek v. Jansen*, 899 F.3d 544, 547-48 (8th Cir. 2018), with *Carpenter v. Gage*, 686 F.3d 644, 649-50 (8th Cir. 2012)). The Complaint does not allege, for example, that Plaintiff was nonviolent, that the offense for which she was initially stopped was minor, that she posed no threat to the officers or others, or that she was not resisting arrest or trying to flee. Plaintiff's allegations demonstrate, at best, a tense situation where some level of force was necessary, but precisely how much cannot be determined with any degree of certainty.

For example, Plaintiff alleges that Metcalf "forc[ed]" her into his vehicle, Doc. 1 ¶ 20, but she neglects to allege any facts about her own conduct at that time. Without knowing what Plaintiff's conduct was, it is impossible to plausibly infer that Metcalf's force was unreasonable in response thereto. She also alleges that "Defendant Officers sprayed her with pepper spray and repeatedly hit her on the leg with a baton," including when "she was on the ground," but again does not provide any facts about her own conduct at that time. Plaintiff does assert that the Individual Defendants sprayed her with pepper spray and hit her with a baton "without provocation," Doc. 1 ¶ 20, but that is a "wholly conclusory statement" with no factual support, *Twombly*, 550 U.S. at 561. Whether there was sufficient provocation to justify the Individual Defendants' use of force is the very question of law that the objective reasonableness test is meant to address. Plaintiff has alleged no facts from which the Court could infer a lack of provocation. Aside from an implicit admission that Individual Defendants had to "secure [her] cooperation," Plaintiff is silent as to her own conduct.

Finally, Plaintiff alleges that "Defendant Officers continued to pepper spray and hit [her] while she was restrained and pinned in the front seat of Officer Metcalf's car . . . ." *Id.* ¶ 21. She does not explain in what manner she was "restrained" or why she was "pinned," however. And she again neglects to describe her own conduct at the time. Considering Plaintiff's affirmative allegations—including that it was necessary for the officers to "secure [her] cooperation," which does imply that she was resisting arrest—and lacking any

10

allegations relating to her own conduct, it is impossible to evaluate whether the Individual Defendants' use of force was unreasonable in response thereto.

Assuming all of Plaintiff's allegations to be true and giving her the benefit of every reasonable inference, she provides no basis for a reasonable factfinder to find that the Individual Defendants violated her Fourth Amendment rights by using an objectively unreasonable amount of force under the circumstances. *See Chambers*, 641 F.3d at 905.

> b. *Plaintiff has failed to meet her burden to show that the Individual Defendants violated a clearly established right.*

Qualified immunity exists to protect "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted). "[T]he salient question . . . is whether the state of the law in [2016] gave [the Individual Defendants] fair warning that their alleged treatment of [Plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Importantly, *the plaintiff bears the burden* to show that the defendant's conduct violated a right that was clearly established at the time of the alleged violation. *Graham v. Barnette*, 5 F.4th 872, 887 (2021); *accord Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018); *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002). "To demonstrate the law is 'clearly established,' the plaintiff must show a 'reasonable official would understand that what he is doing violate[s] plaintiff's rights.'" *Sparr*, 306 F.3d at 593 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *accord Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Although case law directly on point is not necessary to demonstrate that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas*, 142 S. Ct. at 8 (quoting *White*, 137 S. Ct. at 551). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "Specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (quoting *Mullenix*, 577 U.S. at 12).

As the Eighth Circuit and this Court have routinely held, to satisfy the second prong of the qualified immunity analysis, a plaintiff must "point to existing circuit precedent that

involves sufficiently similar facts to squarely govern the officers' conduct in the specific circumstances at issue," *Graham*, 5 F.4th at 887 (quoting *Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020)) (cleaned up), "or, in the absence of binding precedent, . . . present a robust consensus of cases of persuasive authority constituting settled law," *id.* (quoting *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017)) (cleaned up).[4] *See also District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018) (defendant officers entitled to qualified immunity where "[t]ellingly, neither the panel majority nor the [plaintiffs] have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances") (quotation marks and citation omitted); *Lewis v. City of St. Louis*, 932 F.3d 646, 649 (8th Cir. 2019) (denial of qualified immunity reversed where plaintiff "has not offered a single authority" to show that the defendant violated a clearly established law); *Walker*, 881 F.3d at 1061-62 (where single case presented by plaintiffs is factually distinguishable, "plaintiffs have not carried their burden to show that the unconstitutional nature of [the defendant officer's] conduct was clearly established").

Here, Plaintiff has categorically failed to carry her burden to show that the Individual Defendants violated a right that was clearly established at the time of the alleged violation. Not only has she failed to identify a case on point; she has identified no case at all. Moreover, although the Individual Defendants' motion to dismiss specifically raised the defense of *qualified immunity*—which immunizes state actors from certain claims under *federal law*—Plaintiff's Memorandum in Opposition argues that the Individual Defendants are not entitled to *official immunity*—a Missouri common-law doctrine that immunizes state actors from certain claims under *state law*. *See* Doc. 22 at 12-13 (citing *Rhea v. Sapp*, 463 S.W.3d 370,

---

[4] The unlawfulness of conduct can also be deemed clearly established in "an obvious case, . . . even without a body of relevant case law." *Brosseau*, 543 U.S. at 199 (citing *Hope*, 536 U.S. at 738 (noting in a case where the Eighth Amendment violation was "obvious" that there need not be a materially similar case for the right to be clearly established)). When confronted with "extreme circumstances" and "particularly egregious facts," "a general constitutional rule"—such as the Fourth Amendment's objective unreasonableness standard, *see Graham*, 490 U.S. at 388—"may apply with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam) (quoting *Hope*, 536 U.S. at 741). But this is not an "obvious case," because Plaintiff has not alleged facts from which a reasonable factfinder could find that the Individual Defendants' conduct was unreasonable, let alone *obviously* unreasonable. *See supra* Section I.B.3.a.

12

375-76 (Mo. Ct. App. 2015); *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986); *Mauzy v. Mexico Sch. Dist. No. 59*, 878 F. Supp. 153, 156 (E.D. Mo. 1995) (applying Missouri's doctrine of official immunity to state-law claims)). Plaintiff's Opposition does not acknowledge the well-known two-factor *Harlow* test, nor does she attempt to satisfy the second prong of that test by arguing that the Individual Defendants' conduct violated a clearly established law. Plaintiff has failed to undertake even a minimal effort to carry her burden.[5]

Because Plaintiff has failed to carry her burden to show that the Individual Defendants violated a right that was clearly established at the time of the alleged violation, the Individual Defendants are entitled to qualified immunity. Plaintiff's § 1983 claim in Count I must therefore be dismissed.

## II.     The City of St. Louis's Motion to Dismiss (Doc. 7)

In Count II of the Complaint, Plaintiff brings a § 1983 claim against the City based on the Individual Defendants' alleged violations of her constitutionally protected rights. Specifically, Plaintiff alleges that the City had an unconstitutional policy or custom, Doc. 1 ¶ 37; failed to implement proper policies, *id.* ¶ 38(f); and failed to instruct, train, supervise or discipline its officers, *id.* ¶ 38(e), (g); and that the City's failure caused the Individual Defendants to use excessive force and injure Plaintiff, *id.* ¶ 46. The City argues that Count II should be dismissed because Plaintiff fails to allege facts sufficient to state a claim for municipal liability under § 1983.

To establish § 1983 liability against a municipality, "a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the government entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as

---

[5] Puzzlingly, although the Individual Defendants thoroughly outlined Plaintiff's errors in their Memorandum in Reply, *see* Doc. 24 at 5-7, Plaintiff did not seek leave to correct them. Moreover, months later, after Defendants Morris, Baker, and Colombo filed their second motion to dismiss—which included the exact same qualified immunity arguments as their first motion—Plaintiff re-filed the same deficient arguments in response. Doc. 41 at 8-9. Plaintiff thus had two bites at the apple and made no attempt to meet the standard on either occasion.

an entity is responsible under § 1983."). A municipality may also be liable for its failure to act. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (local government may be liable for failure to train or supervise police use of force if the city's failure to act demonstrated "deliberate indifference to the rights of persons with whom the police come into contact"); *Connick v. Thompson*, 563 U.S. 51 (2011) (applied *Canton* to prosecutors, but held that a single *Brady* violation was insufficient to show deliberate indifference or conscious disregard for defendants' *Brady* rights). Thus, to establish § 1983 liability against a municipality, the "plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Aldridge v. City of St. Louis*, 2019 WL 1695982, at * 9 (E.D. Mo. Apr. 17, 2019) (citing *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018)).

As a preliminary matter, Plaintiff appears to have mistakenly relied on certain *Conley*-era *Monell* cases to support the proposition that she need not allege a factual basis for her *Monell* claim against the City. *See* Doc. 20 at 5 (citing *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003); *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004); *see also Conley v. Gibson*, 355 U.S. 41 (1957). Specifically, Plaintiff states that "[a] plaintiff is not required to make specific reference to an unconstitutional policy or custom to survive a motion to dismiss; rather, a plaintiff's complaint must contain 'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the [defendant].'" Doc. 20 at 5 (quoting *Parsons v. McCann*, 138 F. Supp. 3d 1086, 1099 (D. Neb. 2015) (quoting *Doe ex rel. Doe*, 340 F.3d at 614; citing *Crumpley-Patterson*, 388 F.3d at 591)). Plaintiff also states that "[t]he failure of the [plaintiffs] to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to their claim for relief." Doc. 20 at 5 (quoting *Crumpley-Patterson*, 388 F.3d at 591).

To the extent Plaintiff is relying on *Norfolk* and *Crumpley-Patterson* to excuse her failure to plead sufficient facts to support her *Monell* claims, her reliance is misplaced. As this Court has explained previously, "*Norfolk* and *Crumpley-Patterson* did not relax the pleading standard for *Monell* claims. Rather, they clarified that plaintiffs who want to proceed under *Monell* need not use precise legal terms like 'unconstitutional custom' in their pleadings; they need only plead facts from which such a custom can be inferred." *Naes v. City*

14

*of St. Louis*, 2021 WL 6049815, at *7 n.6 (E.D. Mo. Dec. 21, 2021). Here, as in *Naes*, "Plaintiff has done the opposite: [S]he has used the appropriate legal terms for a *Monell* . . . claim, but [s]he has not pled sufficient facts to support an inference that such a custom exists." *Id.* (citing *Twombly*, 550 U.S. at 556); *see id.* ("[A]lthough Plaintiff is not required to *prove* [her] facts at this stage, [she] must at least allege them.")); *see also Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)) ("[W]here the well-pleaded facts do not permit the court to infer more than a mere possibly of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'").

### A.  Plaintiff identifies no official City policy.

"Court[s] do[ ] not use the terms 'policy' and 'custom' interchangeably when conducting a *Monell* analysis." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler*, 165 F.3d at 1204 (citing *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998)). Plaintiff does not identify any official City policy in her Complaint that could have caused her to be injured by the Individual Defendants' alleged conduct. The Court must therefore turn to whether Plaintiff has established the existence of an unofficial custom.

### B.  Plaintiff fails to allege an unofficial custom.

To state a viable § 1983 claim against the City based on an unconstitutional custom, the plaintiff must allege facts that show:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware*, 150 F.3d at 880 (quoting *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)).

Plaintiff argues that paragraphs 38 through 44 and 47 of the Complaint sufficiently allege the existence of an unconstitutional custom. Doc. 20 at 6. Having reviewed those

15

paragraphs, the Court disagrees.  The allegations therein either are wholly conclusory or set forth "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.  For example, paragraph 38 states that "officers of the Airport Police Department . . . use excessive force, including deadly force, without regard for the need for the use of force, or without regard for the legality of its use." Doc. 1 ¶ 38(a).  That allegation does not provide a provable fact, such as an instance where an officer used excessive force; it merely concludes that officers use such force without citing a single instance.

> Of those cited by Plaintiff, paragraph 43 provides the greatest factual detail:
>
> Upon information and belief, Defendant Officer Metcalf and one or more Airport Police Department and Public Safety Department officers have engaged in the same or similar conduct as that experienced by Ms. Watkins, including being subjected to improper Crisis Intervention care, subjecting others to excessive force, improper restraint and using a pepper spray and baton device in an unauthorized and excessive manner.  Defendant City of St. Louis had received complaints regarding these similar incidents prior to the date of  the incident involving the plaintiff and at least two lawsuits and/or claims have been filed against one or more of the defendants relating to excessive force.

Doc. 1 ¶ 43.  Such bare assertions, without more specific supporting allegations, are insufficient to establish an unconstitutional custom.  They do not state any facts that show either a "continuing, widespread, persistent pattern" of officers subjecting individuals to excessive use of pepper spray or batons, or a "deliberate indifference to or tacit authorization of such conduct" by the City. *See Ware*, 150 F.3d at 880.  They do not allege any facts that could support a conclusion that wrongful conduct occurred; they simply assert that it did.

To the extent that the paragraph does provide specifics, they are insufficient to sustain Plaintiff's claim.  The mere filing of a lawsuit or complaint does not establish liability. *See Naes*, 2021 WL 6049815, at *6-7 (concluding that even the settlement of a lawsuit cannot be used to establish the validity of the alleged claims that were settled) (citing Fed. R. Evid. 408; *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966 (8th Cir. 2011); *Green v. Baca*, 226 F.R.D. 624, 640 (C.D. Cal. 2005); *Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 224 (4th Cir. 2020)).  That "two lawsuits and/or claims" related to the use of excessive force may have been "filed against one or more of the defendants" says nothing about whether the defendants were culpable for the conduct alleged therein; nor does it shed any light on

16

whether the City was deliberately indifferent to such conduct. Plaintiff has not alleged any facts supporting a pattern of unconstitutional conduct, such as how many instances of similar conduct there were, when those instances occurred, how many different officers were involved, or whether the City was aware of those instances and failed to discipline those officers. Thus Plaintiff has fallen far short of alleging a "pattern of unconstitutional conduct . . . so pervasive and widespread so 'as to have the effect and force of law.'" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (holding that two or three instances a year apart is not a custom); *see Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 896 (E.D. Mo. 2019) (holding that fourteen instances in six years is not a custom).

### C. Plaintiff fails to allege a failure to train or supervise.

"When governmental policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the governmental entity may be deemed deliberately indifferent if the policymakers choose to retain that program." *Ball-Bey*, 415 F. Supp. 3d at 900. Courts analyze failure to supervise claims the same way as failure to train claims. *Id.* (citing *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013)).

The Complaint states that "[t]he failure to train, discipline or supervise the officers of the Airport Police Department . . . has resulted in members of the Airport Police Department . . . using excessive force as a matter of custom in violation of clearly established law," and "Defendants' failure to train, supervise or discipline its officers is not objectively reasonable." Doc. 1 ¶ 41. It is unclear whether Plaintiff intended to allege a failure to train or supervise claim or just an unconstitutional custom claim. But to the extent that Plaintiff does allege municipal liability for a failure to train or supervise, the City argues that the allegations fail to state a cognizable claim. Doc. 6 at 4-5; Doc. 23 at 4-5.

To state a claim for failure to train or supervise, Plaintiff must allege facts sufficient to show: (1) the City's training or supervision practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting its training or supervision practices; (3) the City's failure to train or supervise was the result of deliberate and conscious choices that it made; and (4) the City's alleged training or supervision practices caused Plaintiff's constitutional deprivation. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "A pattern of similar constitutional violations by untrained employees is

17

'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Ball-Bey*, 415 F. Supp. 3d 884, 900 (quoting *Connick*, 563 U.S. at 60). "Ultimately, [P]laintiff must prove that the City 'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Aldridge*, 2019 WL 1695982, *11 (quoting *Brewington*, 902 F.3d at 803).

Plaintiff argues that, "[w]ith regards to 'customs,' Paragraph 41 of [the] Complaint clearly sets out" how the City "fail[ed] to train, supervise or discipline its officers," which resulted in officers "using excessive force as a matter of custom." Doc. 20 at 7. Paragraph 41 states:

> An integral part of the discharge of the duties of City of St. Louis is the establishment of an effective internal affairs function by which complaints about officer conduct, acts and failures to act would be received, recorded, investigated and accurately determined. Defendants City of St. Louis, Airport Police Department and Public Safety Department failed to thoroughly investigate or review claims of excessive force or even use of force. They failed to thoroughly investigate or review unauthorized and excessive use of pepper spray and baton devices, restraint of persons and crisis interaction, failed to monitor officers against whom excessive force and unauthorized and excessive use of pepper spray and baton device and other restraint and crisis intervention complaints had been made and failed to remove officers from active duty who were found to have engaged in excessive force and unauthorized and excessive use of pepper spray and baton devices and other restraint maneuvers. The failure to train, discipline or supervise the officers of the Airport Police Department and Public Safety Department has resulted in members of the Airport Police Department and Public Safety Department using excessive force as a matter of custom in violation of clearly established law. Defendants' failure to train, supervise or discipline its officers is not objectively reasonable.

Doc. 1 ¶ 41.

With respect to Plaintiff's failure to train or supervise claim, she has again failed to allege any actual facts. Her Complaint rests on either conclusory "recitation[s] of the elements" of a failure to train or supervise claim or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. For example, Plaintiff alleges that the City "failed to thoroughly investigate or review claims of excessive force or even use of force," but she does not identify any incidents that were not investigated, nor even any that were not investigated "thoroughly." Doc. 1 ¶ 41. She alleges that the City "failed to thoroughly

18

investigate or review unauthorized and excessive use of pepper spray and baton devices," but aside from the incident involving herself, she provides no allegations of incidents in which pepper spray or batons were used; nor has she explained how such use was "unauthorized" or "excessive." She alleges that the City failed to "monitor" officers against whom "complaints had been made" or "remove" officers "who were found to have engaged in excessive force," but she does not provide any facts supporting that claim. Finally, although she alleges that the City's "failure to train, discipline or supervise [its] officers . . . has resulted in [officers] . . . using excessive force as a matter of custom," she again does not point to any actual facts to support that claim.

Plaintiff has failed to allege facts sufficient to show that the City's training or supervision practices were inadequate. *Ulrich*, 715 F.3d at 1061. She has also failed to show that there was "[a] pattern of similar constitutional violations by untrained employees," *Ball-Bey*, 415 F. Supp. 3d 884, 900 (quoting *Connick*, 563 U.S. at 60); that the City was on notice of such a pattern of constitutional violations, *Aldridge*, 2019 WL 1695982, *11 (quoting *Brewington*, 902 F.3d at 803); or that the City deliberately chose not to act in response, *Ulrich*, 715 F.3d at 1061. Thus, she has not stated a claim for failure to train or supervise.

## Conclusion

In sum, Count I is subject to dismissal for six reasons: First, Plaintiff's claims against the Individual Defendants in their official capacities are redundant of her claim against the City. Second, Plaintiff disclaims any claim under 42 U.S.C. § 1985. Third, she has no claim under the Eighth Amendment, because she was not incarcerated at the time of the alleged incident. Fourth, she has no claim under the Fourteenth Amendment, because her excessive-force claims must be brought under the Fourth Amendment. Fifth, general allegations directed only at "Officer Defendants" fail to demonstrate individual liability on the part of any specific Individual Defendant. And sixth, even if the alleged conduct were attributable to specific individuals, based on the facts as alleged in the Complaint, the Individual Defendants are entitled to qualified immunity. Count II is subject to dismissal because Plaintiff has failed to allege facts sufficient to establish § 1983 liability on the part of the City through an official policy, an unofficial custom, or a failure to train or supervise.

Accordingly,

**IT IS HEREBY ORDERED** that the City of St. Louis's Amended Motion to Dismiss, Doc. 7, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Individual Defendants' Motion to Dismiss, Doc. 11, is **GRANTED**.

**IT IS FURTHER ORDERED** that Morris, Baker, and Colombo's Second Motion to Dismiss is **DENIED as moot**.

**IT IS FINALLY ORDERED** that the Complaint, Doc. 1, is **DISMISSED**.  A separate Order of Dismissal will be issued herewith.

Dated this 28th day of September, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE